**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

DARek JONES and MICAH AMMERMAN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

RAMBOLL LIMITED, RAMBOLL US CONSULTING, INC., BOARD OF DIRECTORS FOR RAMBOLL US CONSULTING, INC., RAMBOLL US RETIREMENT & SAVINGS PLAN SETTLOR COMMITTEE, RAMBOLL US RETIREMENT & SAVINGS PLAN FIDUCIARY COMMITTEE, RAMBOLL US RETIREMENT & SAVINGS PLAN INVESTMENT COMMITTEE, and JOHN DOES 1-40,

Defendants.

**CIVIL ACTION NO.:**
5:26-cv-273 (BKS/ML)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF SETTLEMENT NOTICE, PLAN OF ALLOCATION, AND SCHEDULING OF FAIRNESS HEARING**

## TABLE OF CONTENTS

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 2

A. Procedural History and Settlement Negotiations ....... 2

B. Claims for Relief ....... 2

C. The Proposed Settlement ....... 3

D. Class Notice and Administration of Claims ....... 4

III. PRELIMINARY APPROVAL IS WARRANTED ....... 5

A. The Proposed Class Meets all Rule 23 Requirements ....... 5

1. The Class is Sufficiently Numerous ....... 6

2. Common Questions of Law and Fact Abound ....... 6

3. Plaintiffs' Claims are Typical of the Class ....... 7

4. Plaintiffs and Class Counsel Will Adequately Protect the Class's Interests ....... 8

i. Plaintiffs Are Adequate Representatives ....... 8

ii. Plaintiffs' Counsel Are more than adequate ....... 9

5. The Class May Be Properly Certified Under Rule 23(b)(1) ....... 10

IV. THE SETTLEMENT SHOULD BE PRELIMINIARILY APPROVED ....... 11

A. The Settlement Meets All Rule 23 Requirements for Approval of the Settlement ....... 11

B. The Settlement Satisfies Second Circuit Requirements ....... 12

1. The complexity, expense, and likely duration of the litigation ....... 12

2. Notice will allow absent class members to object to the Settlement ....... 13

3. The stage of the of the prceedings and the amount of discovery conducted ....14

4. The risks of establishing liability, establishing damages, and maintaining class certification through the trial weigh in favor of preliminary settlement approval (factors 4, 5 and 6) ....15

5. Defendants' ability to withstand a greater judgment ....16

6. The range of reasonableness of the settlement fund in light of all the attendant risks of litigation (factors 8 and 9) ....16

V. CONCLUSION ....18

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*In re AOL Time Warner ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .......... 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .......... 8

*Beach v. JPMorgan Chase Bank, N.A.*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) .......... 6

*In re BellSouth Corp. ERISA Litig.*,
2006 WL 431178 (N.D. Ga. Dec. 5, 2006) .......... 16

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) .......... 12

*City of Detroit v. Grinnell Corporation*,
495 F.2d 448 (2d Cir. 1974) .......... 12, 14, 16, 18

*In re Currency Conversion Fee Antitrust Litig.*,
2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .......... 17

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......... 16

*Davis v. Magna Int'l of Am., Inc.*,
2025 WL 66052 (E.D. Mich. Jan. 10, 2025) .......... 13

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .......... 15

*Diaz v. BTG Int'l Inc.*,
2021 WL 2414580 (E.D. Pa. June 14, 2021) .......... 9, 10, 14, 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) .......... 6

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......... 16

*Foster v. Adams & Assocs., Inc.*,
No. 18-cv-02723, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ....................................................18

*Gaines v. BDO USA, LLP*,
No. 22-cv 1878 (N.D. Ill. May 18, 2024) ..........................................................................18

*Garthwait v. Eversource Energy Co.,*
20-CV-00902, 2022 WL 1657469 (D. Conn. May 25, 2022).........................................................7

*In re Glob. Crossing Sec. & ERISA Litig*.,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................*Passim*

*In re GSE Bonds Antitrust Litig*.,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)...................................................................13, 16, 17

*Hawkins v. Cintas Corp*.,
No. 19-cv-1062, 2024 WL 3982210 (S.D. Ohio Aug. 27, 2024) (*Hawkins I*) ........................13, 14

*Hawkins v. Cintas Corp*.,
No. 19-cv-1062, 2025 WL 523909 (S.D. Ohio Feb. 18, 2025) (*Hawkins II*)...............................10

*In re Ikon Office Solutions, Inc.*,
191 F.R.D. 457 (E.D. Pa. 2000).........................................................................................6

*Jander v. Retirement Plans Committee of IBM*,
No. 15-cv-3781, 2021 WL 3115709 (S.D.N.Y. July 22, 2021).............................................13, 16

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
No. 16-cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..................................................18

*Johnson v. Nextel Comms., Inc.,*
780 F.3d 128 (2d Cir. 2015)...............................................................................................6

*Karg v. Transamerica Corp.,*
No. 18-CV-134, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) ...................................................8

*Karpik v. Huntington Bancshares Inc*.,
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ........................................13, 14, 15

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr*.,
No. 15-CV-1113, 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ...................................................16

*Kennedy v. Aegis Media Americas, Inc.*,
No. 20-CV-03624, 2023 WL 5294132 (S.D.N.Y. Aug. 17, 2023).....................................5, 7, 8, 9

*Kindle v. Dejana*,
315 F.R.D. 7 (E.D.N.Y. 2016) ....................10

*Krueger v. Ameriprise,*
No. 11-cv-02781, 2015 WL 4246879 (D. Minn. July 13, 2015) ....................13, 14

*Kruger v. Novant Health, Inc*.
No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ....................14

*In re Marsh ERISA Litig*.,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................1

*Mass. Mut. Life Ins. Co.*,
473 U.S. 134 (1985)....................10

*Mehling v. New York Life Ins. Co.*,
248 F.R.D. 455 (E.D. Pa. 2008)....................17

*Nesbeth v. ICON Clinical Rsch. LLC*,
No. 21-CV-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022)....................7, 9, 10, 11

*In re PaineWebber Ltd. P'ships Litig*.,
147 F.3d 132 (2d Cir. 1998)....................1

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017)....................6

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)....................7

*Rodriguez v. CPI Aerostructures, Inc.*,
No. 20-CV-0982, 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ....................5

*Sacerdote v. New York Univ*.,
No. 16-CV-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)....................7, 9, 11

*Stanford* v. *Foamex, L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009)....................11

*Thomsen v. Morley Cos., Inc*
No. 1:22-cv-10271, 2022 WL 16708240 (E.D. Mich. Nov. 4, 2022)....................5

*Tracey v. MIT*,
No. 16-cv-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) ....................9

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 8:15-cv-01614 (C.D. Cal. July 30, 2018)....18

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)....5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....6

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20 2008)....13

**STATUTES**

FED. R. CIV. P 23....5, 7, 11, 23

FED. R. CIV. P 23(a) ....5, 11

FED. R. CIV. P 23(a)(1)....6

FED. R. CIV. P 23(a)(2)....6

FED. R. CIV. P 23(b)(1) ....1, 11

FED. R. CIV. P 23(b)(1)(A)....10, 11

FED. R. CIV. P 23(b)(1)(B) ....10, 11

FED. R. CIV. P. 23(e) ....11

FED. R. Civ. P. 23(e)(1)(B)....11

FED. R. Civ. P. 23(e)(1)(C)....12

FED. R. CIV. P. 23(e)(2)....11, 12

FED. R. CIV. P. 23(e)(3)....11

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ....18

29 U.S.C. § 1002(21)(A)....2

29 U.S.C. § 1104(a) ....1

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA")....................................................................18

Employee Retirement Income Security Act of 1974 ............................................................*Passim*

## I. INTRODUCTION

Plaintiffs, Darek Jones and Micah Ammerman ("Plaintiffs"), by and through their undersigned counsel on behalf of the Ramboll US Retirement & Savings Plan (the "Plan"), respectfully submit this Memorandum of Law in support of their motion for preliminary approval of the proposed Settlement of this ERISA class action. Plaintiffs commenced this action against Defendants[1] on February 20, 2026, with the filing of the Complaint. *See* ECF No. 1 ("Compl."). The Complaint alleged violations of fiduciary duties of prudence under ERISA § 404(a), 29 U.S.C. § 1104(a).

The Settling Parties (or "Parties") participated in arms-length negotiations over several weeks and agreed to a settlement in principle of $750,000.00 (Seven Hundred Fifty Thousand Dollars) on July 29, 2026. Over the past several weeks, the Parties have negotiated the specific terms of the Settlement Agreement and present it now for the Court's preliminary approval.[2] Plaintiffs believe the Settlement is an excellent result, providing a substantial, immediate payment to Settlement Class members and eliminating the risks and cost of trial. A trial could result in a reduced recovery or no recovery at all. Hence, "[t]here is a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *In re Marsh ERISA Litig*., 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (quoting *In re PaineWebber Ltd. P'ships Litig*., 147 F.3d 132, 138 (2d Cir.

---

[1] "Defendants" refers to the Ramboll Limited, Ramboll US Consulting, Inc., Board of Directors for Ramboll U.S. Consulting, Inc., Ramboll US Retirement & Savings Plan Settlor Committee, Ramboll US Retirement & Savings Plan Fiduciary Committee, and Ramboll US Retirement & Savings Plan Investment Committee.

[2] Capitalized and undefined terms have the meaning ascribed to them in the Settlement Agreement, attached to the Declaration of Mark Gyandoh ("Gyandoh Decl.") as Ex. 1. The Settlement Agreement has several exhibits: A (Long-Form Settlement Notice); B (Short-Form Postcard Settlement Notice); C (Plan of Allocation); D (Proposed Preliminary Approval Order); and E (proposed Final Approval Order).

1998)). As set forth below, the settlement is fair, reasonable, and adequate under governing law, and meets all prerequisites for preliminary approval and dissemination of the Class Notice.

## II. BACKGROUND

### A. Procedural History and Settlement Negotiations

For several months before filing suit, Capozzi Adler P.C., on behalf of Plaintiffs, conducted a comprehensive prefiling investigation, including engaging consulting experts and analyzing various Plan and participant documents. Gyandoh Decl., ¶¶ 3, 8-10. On February 20, 2026, Plaintiffs filed the Complaint. On July 2, 2026, Defendants filed and served their Notice of Motion to Dismiss Plaintiffs' Complaint. *See* ECF No. 37. Prior to Plaintiffs' filing their opposition to the Motion to Dismiss, the Parties engaged in meaningful settlement discussions and reached a mutual agreement in principle on July 29, 2026. On July 31, 2026, the Parties filed a Joint Notice of Settlement. *See* ECF No. 28.

### B. Claims for Relief

Plaintiffs' theory of liability alleges that "during the putative Class Period, Defendants, as 'fiduciaries' of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan, to Plaintiffs, and to the other participants of the Plan by failing to objectively and adequately review the Plan's investment portfolio, initially and on an ongoing basis, with due care to ensure that each investment option was prudent, in terms of performance. (quoting 29 U.S.C. § 1102(21)(A)). In particular, Plaintiffs allege Defendants breached their fiduciary duty of prudence by selecting and/or maintaining the Prudential Guaranteed Income Fund, a guaranteed investment contract ("GIC"), that Plaintiffs allege had lower crediting rates than comparable and available GICs. Plaintiffs also allege that Defendants

engaged in prohibited transactions under ERISA with a party-in-interest. Compl., ¶¶ 8-19. Plaintiffs' claims are as follows:

COUNT I: Breaches of Fiduciary Duty of Prudence

COUNT II: Failure to Adequately Monitor Other Fiduciaries

COUNT III: Violations of ERISA's Prohibited Transactions

Defendants deny all claims and deny that they ever engaged in any wrongful conduct.

### C. The Proposed Settlement

The Settlement provides that Defendants will pay $750,000.00– the Gross Settlement Amount – to be allocated to participants on a *pro-rata* basis pursuant to the proposed Plan of Allocation in exchange for releases and dismissal of this action. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court. Gyandoh Decl., ¶¶ 16-17.

The Class Members include all individuals in the proposed Settlement Class:

> All persons who were Participants or Beneficiaries in the Ramboll US Retirement & Savings Plan at any time from January 1, 2020 through the date the United States District Court grants preliminary approval of Plaintiffs' Motion for Preliminary Approval of Settlement

Gyandoh Decl., ¶ 18 (quoting Settlement Agreement, Section 1.45).

Class Counsel intends to seek to recover their attorneys' fees not to exceed one third of the Gross Settlement Amount, meaning $250,000. Gyandoh Decl., ¶ 19 (citing Settlement Agreement, Section 6.1). Class Counsel also intends to seek to recover reasonable litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation. *Id.* Additionally, Class Counsel intends to seek Class Representatives' Case Contribution Awards in an amount not to

exceed $5,000 each for Class Representatives Darek Jones and Micah Ammerman. *Id*. The approval of the Settlement is not contingent on Plaintiffs' receiving the entire, requested amount of attorneys' fees and costs, or Class Representatives' Case Contribution Awards. Defendants also intend to retain an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan. Gyandoh Decl., ¶ 20 (citing Settlement Agreement, Article 1.25). Fees and expenses to the Independent Fiduciary will be paid as Administrative Expenses to be deducted from the Gross Settlement Amount. *Id.*

### D. Class Notice and Administration of Claims

The Class Notice and notice dissemination procedures are reasonable and provide "the best notice that is practicable under the circumstances." Rule 23(c)(3). Plaintiffs have selected Analytics Consulting LLC ("Analytics") to be the Settlement Administrator. Analytics is highly experienced in class action claims administration. Upon preliminary approval, Analytics will email, if available, or mail by first class mail, the Court-approved Class Notice to Settlement Class members using addresses from records and documents associated with the Plan. Analytics will administer a skip trace and receive updated mailing address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated mailing addresses. Additionally, Analytics will establish a settlement website providing Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class Counsel, and Defense counsel. Lastly, Analytics will institute a case-specific toll-free number for members to listen to an Interactive Voice Response ("IVR") system or speak with a live agent. The Notice, website, and telephone number will inform Settlement Class members of their rights to object, deadline to object, their inability to opt-out, Plaintiffs' Case Contribution Awards, and Class Counsel's request for attorney's fees and expenses. A notice

program that "directs the Claims Administrator to mail notice to the members of the Class and provides detailed procedures for handling returned notices" and "also establishes a settlement website that any member of the Class can access" is the best notice practicable under the circumstances. *Thomsen v. Morley Cos., Inc.*, No. 22-cv-10271, 2022 WL 16708240, at *7 (E.D. Mich. Nov. 4, 2022).

## III. PRELIMINARY APPROVAL IS WARRANTED

"At the first step, the court preliminarily certifies the class and approves the settlement terms, class notices, and administrative procedures proposed by the parties." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-0982, 2023 WL 2184496, at *9 (E.D.N.Y. Feb. 16, 2023) (internal citations omitted).

### A. The Proposed Settlement Class Meets all Rule 23 Requirements for Certification

At the settlement preliminary approval stage, when the court has not previously certified a class, the court may preliminarily certify a class, for settlement purposes only, for purposes of providing notice, leaving the final certification decision for the subsequent final Fairness Hearing. To be certified for settlement purposes, a class must first satisfy the four basic prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* FED. R. CIV. P. 23(a); *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). Courts routinely find that analogous ERISA § 502(a)(2) breach of fiduciary duty claims are well-suited for class status for settlement purposes as they are brought on behalf of retirement plans and affected participants. *See Kennedy v. Aegis Media Americas, Inc.*, No. 20-CV-03624, 2023 WL 5294132, at *2 n.1 (S.D.N.Y. Aug. 17, 2023) ("Similar class certifications have been approved in other, similar ERISA cases challenging the fees and/or investments defined contribution plans.").

The Second Circuit also recognizes an implicit, "modest threshold requirement" of ascertainability. *In re Petrobras Securities*, 862 F.3d 250, 269 (2d Cir. 2017). Ascertainability is not an issue in ERISA cases because "the class 'may be ascertained with reference to investor records, it is administratively feasible to determine whether an investor is a [class] member[,]'" such as by investing in the Plan. *Beach v. JPMorgan Chase Bank, N.A.*, No. 17-CV-563, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 353 (S.D.N.Y. 2015)).

**1. The Class is Sufficiently Numerous**

When there "are thousands of participants in [a] plan in any given year," courts "should make common sense assumptions regarding numerosity" under FED. R. CIV. P. 23(a)(1). *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) (an analogous ERISA breach of fiduciary duty case). Here, there were at least 3,041 participants in the Plan in 2024. *See* Compl., ¶ 48 (citing the 2024 year Form 5500 filed with the U.S. Dept. of Labor at 2). Numerosity is satisfied.

**2. Common Questions of Law and Fact Abound**

Commonality under FED. R. CIV. P. 23(a)(2), involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). "Even a single common question will do." *Id.* at 359 (cleaned up). "A question of law or fact is common to the class if the question is 'capable of classwide resolution – which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Johnson v. Nextel Comms., Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal citations omitted).

"Generally, 'the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.'" *Garthwait v. Eversource Energy Co.,* 20-CV-00902, 2022 WL 1657469, at *21 (D. Conn. May 25, 2022) (quoting *In re Glob. Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 452 (S.D.N.Y. 2004) ("*Global Crossing*"). That is exactly the case here. Plaintiff allege that commonality is satisfied because "[q]uestions common to the Proposed Class include: (1) whether Defendants were Plan fiduciaries; (2) whether Defendants breached their fiduciary duties; (3) whether Plaintiffs suffered injury; and (4) whether the Class is entitled to damages." *Nesbeth v. ICON Clinical Rsch. LLC*, No. 21-CV-1444, 2022 WL 22893879, at *3 (E.D. Pa. Mar. 10, 2022); *see also* Compl., ¶ 34 (listing the same types of common issues); *Kennedy*, 2023 WL 5294132, at *1 ("[A] common question exists as to whether Defendants breached ERISA's duty of prudence in connection with […] monitoring the compensation paid for recordkeeping and administration services" which is "sufficient to establish commonality.").

**3. Plaintiffs' Claims are Typical of the Class**

In ERISA cases where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met." *Garthwait*, 2022 WL 1657469, at * 23 (quoting *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)); *see also Sacerdote v. New York Univ*., No. 16-CV-6284, 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018) ("Each class member's claim is subject to the same proof regarding the defendant's actions with regards to the Plans and the alleged harm experienced by each plaintiff is the same."). Here, Plaintiffs contend that they easily satisfy the typicality prong of Rule 23 because Plaintiffs participated in the Plan and allegedly suffered injuries as a result of Defendants' mismanagement of the Plan as a single entity, including making Plan-wide decisions regarding

selection and maintenance of the Prudential Guaranteed Income Fund as a Plan investment. *See* Compl., ¶¶ 55-58; 66-151; *see also Kennedy*, 2023 WL 5294132, at *1 ("Plaintiffs had an account in the Plan during the proposed class period and […] allegedly paid excessive recordkeeping and administrative fees" meaning that "[t]he proposed class representatives and members of the proposed class therefore allegedly suffered similar harm resulting from defendants' alleged fiduciary breaches.")

### 4. Plaintiffs and Class Counsel Will Adequately Protect the Class's Interests

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs contend that both prongs of the adequacy test are met.

#### i. Plaintiffs Are Adequate Representatives

Here, Plaintiffs understand the nature of their claims and duties as class representatives to vigorously prosecute this case through its conclusion. Plaintiffs have exceeded their duties thus far by, *inter alia*: (a) providing information to counsel prior to the initiation of the action and reviewing the Complaint; (b) providing documents and assisting counsel in discovery; and (c) maintaining communication with counsel and monitoring the progress of the litigation. *See* Darek Jones Decl. ¶ 6; Micah Ammerman Decl. ¶ 6; *see also Kennedy*, 2023 WL 5294132, at *2 (finding similar declarations persuasive); *Karg v. Transamerica Corp.*, No. 18-CV-134, 2020 WL 3400199, at *3 (N.D. Iowa Mar. 25, 2020) (same). Moreover, had this litigation continued, Plaintiffs were committed to seeing this action through to the end and undertaking any responsibilities required of them as class representatives, including testifying at trial. *See* Darek

Jones Decl. ¶ 6-7; Micah Ammermon Decl. ¶ 6-7. Additionally, Plaintiffs do not have any conflicts with the class, particularly because they are bringing this suit on behalf of the Plan as a whole. Truly, "[t]here is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have identical legal and effectively identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citations omitted); *see also Kennedy*, 2023 WL 5294132, at *2 (same); *Tracey v. MIT*, No. 16-cv-11620, 2018 WL 5114167, at * 6 (D. Mass. Oct. 19, 2018) ("[B]ecause the crux" of ERISA breach of fiduciary duty cases, "hinges on whether defendants acted imprudently with respect to the Plan and not the investments of individual participants, this Court [should] find[] no substantial intra-class conflict in the proposed class."). Plaintiffs are adequate class representatives.

**ii. Plaintiffs' Counsel Are more than adequate**

As this Court has previously found, Capozzi Adler is adequate to represent settlement classes in ERISA breach of fiduciary duty cases. *See Kennedy v. Aegis Media Americas, Inc.*, No. 1:20-CV-03624-MMG, Slip Op. (S.D.N.Y. Aug. 17, 2023) (ECF No. 151) (Garnett, J.), at ¶¶ 2-3 (appointing Capozzi Adler, P.C. as Class Counsel for the Settlement Class). The same is true here. Capozzi Adler and the undersigned counsel exercised their extensive experience and knowledge of ERISA matters throughout this litigation, including achieving a settlement. Mark K. Gyandoh is a partner and chair of the Fiduciary Practice Group at Capozzi Adler and has been litigating ERISA fiduciary breach lawsuits for over 21 years and he and Capozzi Adler currently serve as counsel in over two dozen fiduciary breach actions across the country. Gyandoh Decl., ¶¶ 24-33. As many courts in this Circuit and others have held, appointing Capozzi Adler as Class Counsel is warranted. *See e.g., Kennedy*, 2023 WL 5294132, at *2 (Judge Woods finding adequacy satisfied because the undersigned "has no conflicts and will vigorously prosecute this action, [and] noting

its investigation, experience, and qualifications."); *Nesbeth*, 2022 WL 22893879, at *4 ("I will appoint Capozzi Adler, P.C. as Class Counsel. […] Class Counsel has extensive experience and has worked diligently to litigate Plaintiffs' claims."); *Diaz v. BTG Int'l Inc.,* No. 19-CV-1664, 2021 WL 2414580, at *8 (E.D. Pa. June 14, 2021) (appointing the undersigned as settlement Class Counsel and stating that we "appear well qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."); *Hawkins v. Cintas Corp*., No. 19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025) (*Hawkins II*) ("Capozzi Adler has been appointed Class Counsel in several ERISA breach of fiduciary duty cases similar to the instant case."). The Class continues to be adequately represented.

### 5. The Class May Be Properly Certified for Settlement Purposes Under Rule 23(b)(1)

The proposed Class may be certified for settlement purposes under Rule 23(b)(1)(A) and/or (B), as numerous courts have done in similar cases. *See* Gyandoh Decl., Exhibit 4 (list of decisions certifying classes in ERISA actions). Because the Complaint alleges breaches of fiduciary duties under ERISA, the only remedy available to participants in the Plan is plan-wide relief. *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, 139-40 (1985). Class certification for settlement purposes should be granted under Rule 23(b)(1)(B), because "the structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016); *see also Diaz*, 2021 WL 2414580, at *5 ("When a breach of fiduciary duty is at issue, any individual adjudication regarding the breach would necessarily affect the interests of others. […] Therefore, it is appropriate to certify the class pursuant to Rule 23(b)(1)(B)."); *Nesbeth*, 2022 WL 22893879, at *3 (similar).

Alternatively, it is not uncommon for courts to certify ERISA class actions for settlement purposes under both 23(b)(1)(B) and 23(b)(1)(A). *See, e.g.*, *Nesbeth*, 2022 WL 22893879, at *4 ("[F]or the purpose of settlement […] and pursuant to Rule 23(a) and Rule 23(b)(1), I will certify conditionally the Proposed Class."); *Stanford v. Foamex, L.P.*, 263 F.R.D. 156, 173-174 (E.D. Pa. 2009); *Sacerdote,* 2018 WL 840364 (certifying class and subclasses pursuant to Rule 23(b)(1)(A)). Ultimately, class certification for settlement purposes is appropriate.

## IV. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. The Settlement Meets All Rule 23 Requirements for Approval of the Settlement

Pursuant to FED. R. CIV. P. 23(e), at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies factors the court must ultimately consider at the final approval stage:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3) [3]; and

---

[3] Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Here, as discussed above, (1) the settlement was negotiated at arm's length by experienced counsel after significant investigation and subsequent litigation, (2) the Settlement Class was adequately represented by Plaintiffs and Class Counsel, and (3) the relief provided is adequate and equitable to all Settlement Class members as the proposed Plan of Allocation provides for a *pro rata* distribution to each Settlement Class Member. In addition, the Settlement Agreement ensures a substantial and prompt payment to the Plan, and ultimately to Class Members. This substantial relief is far preferable to the possibility of a smaller recovery or none at all. In short, the proposed Settlement is an excellent result and merits preliminary approval.

**B. The Settlement Satisfies Second Circuit Requirements**

In determining if a settlement satisfies FED. R. CIV. P. 23(e)(1)(C), the Second Circuit evaluates nine *Grinnell* factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (quoting *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974)).

An analysis of the nine *Grinnell* factors supports preliminary approval of the Settlement.

**1. The complexity, expense, and likely duration of the litigation**

Without a settlement, the future of this case would be unjustifiably lengthy, costly, and

complex. Indeed, "[t]he complexity inherent in class actions is amplified in ERISA class actions." *Davis v. Magna Int'l of Am., Inc.*, No. 20-cv 11060, 2025 WL 66052, at *3 (E.D. Mich. Jan. 10, 2025) (quoting *Karpik v. Huntington Bancshares Inc.*, No. 17-cv-1153, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021)); *see also Krueger v. Ameriprise,* No. 11-cv-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'"); *Jander v. Retirement Plans Committee* of IBM, No. 15-cv-3781, 2021 WL 3115709, at *3 (S.D.N.Y. July 22, 2021) (same). The Settlement in this Action comes at an opportune time given that if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice relating to class certification, motions for summary judgment, trial, and potential appeals. Put differently, without this Settlement, "[P]laintiffs would have to spend much time and money mastering the immense documentary records and developing fact and expert testimony" on "ERISA, and damages issues[,]" and even if plaintiffs succeeded at trial there would be costly appeals delaying and diminishing recovery. *Global Crossing*, 225 F.R.D. at 456.

**2. Notice will allow absent class members to object to the Settlement**

"The Court need not consider [this factor], which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019) (citing *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20 2008)). However, it is already persuasive that "[t]he Class Representatives who have dedicated time and energy to this matter also find that the Settlement Agreement is fair, reasonable, and adequate." *Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2024 WL 3982210, at *9 (S.D. Ohio Aug.

27, 2024) ("*Hawkins I*"). *See* Darek Jones Decl. ¶ 6; Micah Ammerman Decl. ¶ 6; *see also Karpik*, 2021 WL 757123, at *6 (the class representatives' "support also favors approval.").

**3. The stage of the proceedings and the amount of discovery conducted**

"The third *Grinnell* factor—'the stage of the proceedings and the amount of discovery completed'—is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *Global Crossing*, 225 F.R.D. at 458 (citations omitted). Each side entered the negotiations with a well-informed understanding of the issues and potential pitfalls related to litigation of the claims. The Complaint was filed after a thorough investigation by Plaintiffs' counsel, including the engagement of consulting experts. *See* Gyandoh Decl., ¶¶ 3, 6. Much of the information necessary to Plaintiffs' claims can be derived from the Plan's publicly filed Department of Labor annual Form 5500s and the Plan documents provided to Plaintiffs. *Id.*, ¶ 10.

In *Kruger v. Novant Health, Inc.*, another ERISA breach of fiduciary duty case, the court lauded the amount of informal discovery work that the ERISA class counsel undertook before filing similar complaints, including "meeting with the Plans' participants, obtaining documents from public sources and the Retirement [] Plan administrator, reviewing and analyzing plan documents and financial statements, building on expertise regarding industry practices, conducting extensive legal research, and fashioning the causes of action." *Kruger*, No. 14-cv-208, 2016 WL 6769066, *3 (M.D.N.C. Sept. 29, 2016); *see also Diaz*, 2021 WL 2414580, at *6 (approving an ERISA settlement breach of fiduciary duty settlement where "Counsel represented that discovery encompassed 'informal' discovery, including discovery and analysis from third parties, such as Plaintiffs' consulting experts."); *Hawkins I*, 2024 WL 3982210, at *7 (same). Class Counsel conducted the same rigorous work here.

Indeed, this factor overlaps with the first factor regarding the expense and duration of litigation wherein "[t]he early disposition of this matter supports approval of settlement because" it "significantly reduced the expense to both Parties." *Diaz*, 2021 WL 2414580, at *6. At this stage, Plaintiffs have ample information to evaluate the merits of their case and assess the risk versus reward of proceeding to trial.

**4. The risks of establishing liability, establishing damages, and maintaining class certification through the trial weigh in favor of preliminary settlement approval (factors 4, 5 and 6)**

These factors weigh heavily in favor of approval because without this Settlement, Plaintiffs would endure lengthy and expensive litigation at the risk of less or no recovery at all. Although Plaintiffs are confident in their case, the potential upcoming trial brings real uncertainties for both sides. A trial on the merits in any case always entails some risk, but in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable. *See*, *e.g.*, *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 496-97 (E.D. Mich. 2008) ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law."); *In re BellSouth Corp. ERISA Litig*., No. 02-CV-2440, 2006 WL 431178, at *5 (N.D. Ga. Dec. 5, 2006) ("the rapid influx of new [ERISA] precedents presents an ever changing legal landscape, and there is a constant risk that the law will change before judgment."). Without this settlement, Plaintiffs would have to defeat Defendants' pending motion to dismiss, anticipated motion for summary judgment, and if successful, spend a significant amount of resources to prosecute this case, all with no guarantee of any recovery.

Moreover, even if Plaintiffs were to prevail on liability, "this action would have required expert testimony including expert testimony on damages" which means "Plaintiffs also faced the risk of a low damage award after substantial investment of both time and money." *Diaz*, 2021 WL

2414580, at *6. This is because, "[e]ven if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages." *Karpik*, 2021 WL 757123, at *5 (quoting Restatement (Third) of Trusts § 100 cmt. b (1)). "In short, the legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement." *Global Crossing*, 225 F.R.D. at 460.

**5. Defendants' ability to withstand a greater judgment**

When "other *Grinnell* factors weigh heavily in favor of settlement, the Court may still approve of the settlement as being fair, reasonable, and adequate" even if Defendants are able to pay more than the settlement amount. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr*., No. 15-CV-1113, 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)); *see also In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d at 698 ("against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]."); *In re AOL Time Warner ERISA Litig*., No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair," because this factor "must be weighed" alongside the other *Grinnell* factors). The Court need not closely scrutinize Defendants' ability to withstand a greater judgment, because all other *Grinnell* factors weigh in favor of preliminary approval of the Settlement.

**6. The range of reasonableness of the settlement fund in light of all the attendant risks of litigation (factors 8 and 9)**

"In analyzing the size of the settlement compared to the best possible recovery and in view of the attendant risks, the issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case." *Jander*, 2021 WL 3115709 at *4 (quoting *In re Flag Telecom Holdings Ltd. Sec. Litig*., 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010)). Courts may approve settlements even when the amount

"is not rich in comparison to the vast damages Plaintiffs claim to have suffered" because "the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *Global Crossing*, 225 F.R.D. at 460-61 (noting the risks and complexity of litigation justify smaller settlements). Here, the range of reasonableness is impacted by "the parties disagree[ing] on the amount of potential recovery even if plaintiffs were to prevail on liability." *Id*.

In this case, Plaintiffs' basis for damages is that the Plan offered an underperforming GIC compared to other GICs available on the market that were not selected. Gyandoh Decl., ¶13. Using conservative GIC comparators, Plaintiffs estimate potential damages to range from $3 million to $4 million during the alleged Class Period. Accordingly, this Settlement represents in Plaintiffs' view, 19%- 25% of Plaintiffs' best-case scenario. *Id.* And this amount of course assume Plaintiffs prevail on the question of liability. Defendants, however, had strong arguments against liability as evidenced by arguments raised in their Motion to Dismiss. If any of these arguments were credited by the Court, it would reduce Plaintiffs' damages considerably, if not totally.

In this light, the proposed Settlement Amount of $750,000.00 is a significant result to avoid the costs of continued litigation and potential risk for Plaintiffs to receive less or no damages. For context, the range of the percentage of recovery is in line with, if not better than other settled cases. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 697 (the court accepted a settlement amount of 17% of the range of recovery); *In re Currency Conversion Fee Antitrust Litig*., No. 01 MDL 1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (preliminarily approving a settlement amount "representing roughly 10-15% of the credit transaction fees collected by Defendants."); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving

a settlement representing 20% of estimated damages in ERISA class action)). The percentage of recovery is also better than similar ERISA cases. *See*, *e.g.*, *Johnson v. Fujitsu Tech. & Business of America, Inc.*, No. 16-cv-03698, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving an ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614 (ECF No. 185) (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately 25% of estimated total damages of $47 million); *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723, 2022 WL 425559, at *5 (N.D. Cal. Feb. 11, 2022) (listing ERISA cases approving settlement amounts ranging from 3.2% to 30% of estimated damages); *Gaines v. BDO USA, LLP*, No. 22-cv 1878, slip op. at 3 (N.D. Ill. May 18, 2024) (approving settlement that was less than 3% of plaintiffs' claimed damages in an ERISA case). The Settlement amount is reasonable when considering all the attendant risks of further litigation.

An analysis of the *Grinnel* Factors supports preliminary approval of the Settlement.

## V. CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled no sooner than 120 calendar days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The submitted proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval. For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23.

Dated: October 16, 2026

Respectfully submitted,

/s/ Mark K. Gyandoh
Mark K. Gyandoh, Esquire

PA Attorney ID #88587
*(*Admitted Pro *Hac Vice)*
James A. Maro, Esquire
PA Attorney ID #86420
(Admitted *Pro Hac Vice*)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Phone: (610) 890-0200
Fax: (717) 232-3080
Email: markg@capozziadler.com
jamesm@capozziadler.com

Elizabeth A. Cordello, Esquire
New York Bar #4148284
**PULLANO & FARROW**
401 Main Street
East Rochester, NY 14445
Telephone: (585) 730-4773
Email: ecordello@lawpf.com

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: */s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esq.